UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 12-201-DLB**

**JESSICA MARIE MARLOWE**                                                       **PLAINTIFF**

vs.                     **<u>MEMORANDUM OPINION AND ORDER</u>**

**CAROLYN W. COLVIN, Acting Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I. INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, finds that the Commissioner's decision at Step 3 is not supported by substantial evidence and will, therefore, remand for further proceedings.

## II. FACTS AND PROCEDURAL POSTURE

Plaintiff Jessica Marie Marlowe had received Supplemental Security Income benefits since December 20, 2000 on the basis of mental retardation. (Tr. 63). At that time, Plaintiff was ten years old. (*Id.*). After Plaintiff turned eighteen, the Social Security Administration reviewed her eligibility pursuant to 42 U.S.C. § 1382c(a)(3)(H)(iii) and determined that she was no longer entitled to benefits. (Tr. 66-68). A disability hearing officer reviewed Plaintiff's claim and on October 25, 2010 affirmed the termination of benefits. (Tr. 82-86).

1

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which took place before ALJ Todd Spangler in Middlesboro, Kentucky on June 2, 2011. (Tr. 26). ALJ Spangler returned an unfavorable decision on July 19, 2011, (Tr. 7), and Plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 5). Plaintiff's request was denied on August 2, 2012. Thus, she has requested judicial review of the Social Security Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Tr. 1)

The present action was filed on October 1, 2012. (Doc. #1). The matter has culminated in cross-motions for summary judgment, (Docs. # 6, 7), which are now ripe for review.

### III.  DISCUSSION

#### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are to review the entire administrative record to determine whether the decision is supported by substantial evidence, but may "not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). An administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *See Smith v. Chater*, 99 F.3d

780, 782 (6th Cir. 1996). "Conversely, if the ALJ commits an error of law, the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds*, 424 F. App'x at 414 (quoting *Kalmback v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

The ALJ conducts a five-step analysis in determining disability. 20 C.F.R. § 416.920(a).

Step 1 considers whether the claimant is still performing substantial gainful activity. If so, the claimant is not entitled to benefits. If not, the ALJ proceeds to the next step. Id. at § 416.920(a)(4)(I).

Step 2 determines whether the claimant suffers from any serious mental or physical impairments. If not, the claimant is not entitled to benefits. If so, the ALJ proceeds to the next step. *Id.* at § 416.920(a)(4)(ii).

Step 3 compares the claimant's physical or mental impairments with the automatic triggers for disability payments that are listed in agency regulations. If the claimant's impairments match one of those listed, then the claimant automatically qualifies for benefits. If the claimant does not automatically qualify, then the ALJ proceeds to the next step. *Id.* at § 416.920(a)(4)(iii).

Step 4 determines whether the claimant can perform past relevant work. If so, the claimant is not entitled to benefits. If not, the ALJ proceeds to the fifth and final step. *Id.* at § 416.920(a)(4)(iv).

Step 5 determines whether the claimant can do other work in the national economy. If so, then the claimant is not entitled to benefits. If, however, there is insufficient work that

the plaintiff can perform, then the claimant will receive benefits. At this fifth and final step, the question is not whether Plaintiff is disabled, but whether that disability prevents Plaintiff from doing any type of work that exists in significant numbers. Additionally, at this step the burden of proof shifts from the Plaintiff to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had no past relevant work experience. (Tr. 18). At Step 2, the ALJ determined that Plaintiff had the following severe impairments: depressive disorder and borderline intellectual functioning. (Tr. 12). The ALJ noted that Plaintiff had also reported a history of asthma, as well as back and neck pain. (Tr. 14). However, he found that the evidence showed that Plaintiff did not have a medically determinable severe "physical" impairment. (Id.). At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). At Step 4, the ALJ determined that Plaintiff had not performed any past relevant work. (Tr. 18). He then found that Plaintiff had a residual functional capacity (RFC) to perform a full range of work at all exertional levels, but is limited to 1, 2, and 3-step instructions with no more than occasional contact with coworkers, supervisors, and the general public. (Tr. 16). At Step 5, the ALJ found that Plaintiff was a younger individual age 18-49, and that she had a limited education with the ability to communicate in English. (Tr. 18). Relying on the testimony of a vocational expert (VE) and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there existed a significant number of jobs

4

in the national economy that Plaintiff could perform. (Tr. 19). ALJ Spangler therefore concluded that Plaintiff was not disabled as of June 1, 2009. (*Id.*).

**C.    Analysis**

Plaintiff raises four arguments on appeal. Her first argument challenges the ALJ's conclusion at Step 3 that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, Plaintiff argues that the ALJ did not adequately address the evidence which establishes the existence of mental retardation as reflected by proof of deficits in adaptive functioning during the developmental period and evidence which meets the diagnostic description of Listing 12.05C. Accordingly, Plaintiff argues that the ALJ failed to properly analyze the listed impairment for which she qualifies, and that he did not provide a sufficient explanation as to how he reached the conclusion that the evidence fails to satisfy the listed impairment. Because the Court agrees that the ALJ erred at Step 3, remand is warranted and the Court need not consider the remaining claims of error.

At Step 3, the ALJ is required to evaluate the evidence, compare it to Section 12.05C, and give an explained conclusion, in order to facilitate meaningful judicial review. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). In giving an explained conclusion, the ALJ is not obligated to spell out "every consideration that went into the step three determination" or "the weight he gave each factor in his step three analysis." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). If the ALJ did give a sufficient explanation, his decision at Step 3 is to be affirmed so long as it is supported by substantial evidence. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

5

Plaintiff argues the evidence supports a finding that she meets Listing 12.05(c), which covers mental retardation. "The listing contains four requirements: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; (3) evidence that the condition began before age twenty-two" and (4) a valid IQ score of seventy or below along with a physical or mental impairment imposing an additional and significant work-related limitation." *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2003).

The ALJ disagreed with Plaintiff's protestation that she met Listing 12.05(c). He addressed this conclusion in two portions of his decision. At the outset of his Step 3 findings, the ALJ stated:

> The claimant's attorney has suggested that the claimant meets the requirements of section 12.05(c), Appendix 1, Subpart P, Regulations No. 4 . . . The attorney argued that 12.05 would apply based on earlier IQ testing. However it is important to note that these IQ scores were obtained at a young age and she did not give good effort during the testing. Also, during her current consultative psychological examination, Dr. Pack noted that her IQ scores suggested borderline abilities, which he reported were not inconsistent with her overall interview and history. He also noted that the claimant tested in the borderline range of malingering. Therefore, she does not satisfy the requirements of Section 12.05(c) of the Listing of Impairments.

(Tr. 15). The ALJ provided additional justification for this finding at the end of his Step 3 analysis. He stated:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. During the claimant's previous IQ testing, her scores were noted to be invalid due to malingering. At her current psychological evaluation, the claimant was found to function in the borderline range.

(Tr. 16). The ALJ's analysis has too many flaws for this Court to conclude it was

6

supported by substantial evidence.

The ALJ erroneously makes much of the fact that earlier IQ testing was not reliable because Plaintiff was at young age and did not give good effort during the testing. Social Security Regulations do suggest that IQ scores obtained between ages seven and sixteen are generally reliable for two years. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D)(10). But, the Sixth Circuit has held that it is improper to entirely disregard IQ scores from a claimant's childhood; those scores may be relevant to establishing the manifestation of the claimant's impairment before the age of 22. See Dragon v. Comm'r of Soc. Sec., 470 F. App'x 454, 460-61 (6th Cir. 2012). Additionally, it is inaccurate to say that Plaintiff failed to give good effort on each of her IQ tests. True, Clinical Psychologist Michele Amburgey found on December 6, 2000 that Plaintiff did not respond in a reliable manner to questions, which prevented Amburgery from assessing Plaintiff's IQ. (Tr. 280). However, School Psychologist Kathie Harris was able to assess Plaintiff's IQ in her May 2, 2000 report. Harris found that Plaintiff's Verbal Score was 71 and her Performance Scale Score was 54, resulting in a full Scale Score of 60. (Tr. 274). She also opined that "[c]hances are about nine out of ten that if re-tested her Full scale Score would fall in the 57 to 66 range . . . " (*Id.*). Harris' report never mentions that Plaintiff failed to give good effort during her IQ tests.

Moreover, the ALJ erroneously relied on Consultative Examiner Dr. Phil Pack's finding that Plaintiff's IQ scores suggested borderline abilities, which were not inconsistent with her overall interview and history. Dr. Pack's conclusion was based, at least in part, on the medical history he reviewed. But the history he reviewed was incomplete; he was only provided with Clinical Psychologist Amburgey's report, which stated that "it [was] difficult

7

to get a clear indication of [Plaintiff's] abilities due to what seemed to be a blatant attempt to minimize her abilities." (Tr. 280). That report ultimately was not able to offer a prognosis for Plaintiff. (Tr. 281). However, Dr. Pack was not provided with School Psychologist Harris' report that contained scores from various functional tests, including IQ scores. That report concluded that Plaintiff's scores indicated that she fell well below average cognitive and functional abilities. (Tr. 275). If Dr. Pack would have been provided this report, he would have been unable able to state that Plaintiff's history was not inconsistent with his finding that she has borderline abilities. (*See* Tr. 324).

Furthermore, the ALJ misinterpreted a potion of Dr. Pack's report. The ALJ stated that Dr. Pack's report indicated "that the claimant tested in the borderline range of malingering." (Tr. 15). However, Dr. Pack never found that Plaintiff was malingering. Instead, he reported that "Plaintiff is attentive and cooperative and assures me she is making her best effort on the items presented." Additionally, Dr. Pack noted that Plaintiff received a score of 9 on the Rey 15-Item Test – a measure for the assessment of overt malingering – which "is the minimal cut off for accepted validity on this task." (Tr. 327). The results of this test would suggest that Plaintiff was not malingering during her evaluation with Dr. Pack, which makes the ALJ's statement that Dr. Pack found she "tested in the borderline range of malingering" even more puzzling.

Finally, while it is not completely clear, the ALJ seems to have found that Plaintiff failed to meet listing 12.05(c), in part, because she "does not have a valid verbal, performance, or full scale IQ of 60 through 70." (Tr. 16). The record indicates otherwise. Dr. Pack administered the Wechsler Adult Intelligence Scale – Fourth Edition on Plaintiff on May 9, 2009. Plaintiff scored a 68 on the Verbal Comprehension Index and a received

8

a Full-Scale IQ of 70.  Both of these scores fall within the range set forth in Listing 12.05©. It is not clear why the ALJ ignored these scores.  He possibly discredited the scores based on his faulty belief that Dr. Pack found Plaintiff was malingering, although he does not explicitly say so.  If that was his basis for discrediting the scores, the ALJ erred in doing so; as explained above, Dr. Pack did not find that Plaintiff was malingering.

Each of these errors make it impossible for the Court to conclude that the ALJ's decision at Step 3 is supported by substantial evidence.  In short, the ALJ seems to have ignored the relevance of previous IQ testing, ignored some of the previous IQ testing altogether, misinterpreted portions of the consultative examiner's report, and relied on other faulty portions of the examiner's report.  These errors require the Court to remand this case to the Commissioner for further consideration of whether Plaintiff meets or medically equals the Listing 12.05(c).  Accordingly,

**IT IS ORDERED** as follows:

(1)     Plaintiff's Motion for Summary Judgment (Doc. # 6) is hereby **granted**;

(2)     Defendant's Motion for Summary Judgment (Doc. # 7) is hereby **denied**;

(3)     This case is **remanded** to the Social Security Administration for proceedings consistent with this opinion; and

(4)     A judgment shall be entered concurrently with this opinion.

This 27th day of March, 2014.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-12-201 Marlowe MOO.wpd